United States Courts
Southern District of Texas
FILED

SEP 1 8 2026

Nathan Ochsner, Clerk of Court

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

DEVAN XAVIER PLUMMER and
STACEY ROCHELLE VAUGHN,

Plaintiffs,

v.

CONSUMER PORTFOLIO SERVICES, INC.;
GEICO TEXAS COUNTY MUTUAL
INSURANCE COMPANY;
TIFFANY SMITH; DANIELLE SAUNDERS;
DANIEL STAPP; CLASSIC COLLISION, LLC;
DAVID MILLIGAN; ASHLEY DILLARD
a/k/a ASHLEY MILLER; CCC INTELLIGENT
SOLUTIONS INC.; and MARGARITA CASTRO,

Defendants.

CIVIL ACTION NO. 4:26-cv-06699

**PLAINTIFFS' SUPPLEMENT TO THEIR RESPONSE IN OPPOSITION TO THE MOTION TO COMPEL ARBITRATION (DKT. 8), ADDRESSING THE AMENDED DECLARATION (DKT. 16) AND THE REPLY BRIEF (DKT. 17)**

TO THE HONORABLE ANDREW S. HANEN:

On September 14, 2026, ten days after filing the motion at Docket Entry 8 and four days after Plaintiffs served their Response in Opposition and a motion under Fed. R. Civ. P. 11(c)(2), Defendants Consumer Portfolio Services, Inc. and Margarita Castro filed an Amended Declaration of Mayra Nolasco at Docket Entry 16. On September 17, 2026, they filed their Reply Brief at Docket Entry 17. Plaintiffs supplement their Response to address both. The amendment does not cure the motion, and in two respects it narrows what remains in dispute. The Reply Brief misstates the controlling authority on who decides whether an agreement to arbitrate was formed.

## I. WHAT THE AMENDMENT CHANGED, IN THE DECLARANT'S OWN WORDS

The original declaration at Docket Entry 8-1 is nine pages: two pages of declaration, an exhibit cover page, and six pages of contract. It was executed "this 3rd day of September 2026." The amended declaration at Docket Entry 16 is ten pages: three pages of declaration, the same exhibit cover page, and the same six pages of contract.

One word of substance changed. The business-records paragraph of the original declaration — paragraph 4, the paragraph offered to satisfy Fed. R. Evid. 803(6) — read:

> "These records are made and entered into CPS's systems at or around the time of the events described therein by persons with knowledge of the matters recorded or from information supplied by persons with such knowledge and are maintained by Exeter in the course of its regularly conducted business operations."
>
> Dkt. 8-1 ¶ 4 (emphasis added).

The same paragraph in the amended declaration, renumbered as paragraph 6, is identical except that "Exeter" has become "CPS." Two paragraphs were added ahead of it, which renumbered the remainder and added the third page. Nothing else was altered. The declarant says so herself:

> "It was later brought to my attention that my September 3rd Declaration contains a scrivener's error in Paragraph 4 — specifically, the Declaration mistakenly refers to 'Exeter' in the second sentence when it should refer to 'CPS,' where I am employed. ... All other statements and the attached exhibit are the same."
>
> Dkt. 16 ¶ 4.

## II. THE AMENDMENT IS AN ADMISSION, AND DOCKET ENTRY 8-1 REMAINS ON THE DOCKET

Docket Entry 8-1 was executed under penalty of perjury pursuant to 28 U.S.C. § 1746 on September 3, 2026, and filed the following day as the sole evidentiary support for the motion. Its foundational paragraph attributed the maintenance of the records to a company that is not the declarant's employer, is not a party, and is named nowhere else in the motion or its exhibits. Defendants now concede that the statement was wrong when it was sworn.

Whether the error is characterized as clerical or otherwise, its correction establishes that the paragraph on which Defendants asked the Court to rely did not reflect the declarant's knowledge of CPS's recordkeeping when she signed it. A business-records foundation under Fed. R. Evid. 803(6)(D) requires

a custodian or other qualified witness who can testify to the practice of the business that made and kept the record. A witness who misidentified that business in the paragraph offered for that purpose, and who corrected it only after the error was identified to her, is a witness whose foundation is properly tested rather than accepted on the papers.

Docket Entry 8-1 has not been withdrawn. It remains on the docket as filed, and Docket Entry 16 is a second statement sworn under 28 U.S.C. § 1746 rather than a replacement of the first.

## III. THE SECOND DEFECT IDENTIFIED UNDER RULE 11(c)(2) WAS NOT CORRECTED

Plaintiffs' motion under Fed. R. Civ. P. 11(c)(2), served on September 10, 2026 and not filed, identified two specific defects in Docket Entry 8 and requested two corrections: (a) substitution of the declaration with one whose business-records paragraph identifies the correct custodian, and (b) correction of the block quotation at page 3 of the motion to set out the Arbitration Provision in full or to disclose the sentences removed by ellipsis.

Defendants performed the first and not the second. The motion at Docket Entry 8 has not been amended, withdrawn, or corrected. The block quotation at page 3 stands as filed. Among the sentences the ellipsis removes is this one:

> "If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control."

Footnote 4 of the same motion argues that the Provision incorporates the rules of the American Arbitration Association and that those rules delegate arbitrability to the arbitrator. The sentence excised by the ellipsis provides that the Provision controls over the chosen organization's rules. It is directly contrary to the proposition the quotation is offered to support, and it remains undisclosed to the Court in the motion itself.

Rule 11(c)(2) withholds a served motion from filing only where the challenged paper is "withdrawn or appropriately corrected" within twenty-one days after service. That period runs from September 10, 2026. Plaintiffs state, so that the record is clear and so that Defendants have the remainder of the period, that Docket Entry 16 corrects the first defect and does not reach the second.

## IV. THE EXHIBIT IS UNCHANGED AND HAS NOW BEEN SWORN TO A SECOND TIME, AFTER NOTICE

Plaintiffs' Response placed the provenance of Exhibit A squarely at issue on September 10, 2026, four days before the amendment. Defendants had notice of that challenge and the opportunity to address it. They elected instead to re-swear the exhibit without change and to say so expressly: "All other statements and the attached exhibit are the same."

Paragraph 8 of the amended declaration — paragraph 6 of the original — is also unchanged. It directs the Court to "the bottom of page 6 of the Contract" as the proof of assignment. That page is the page whose authenticity, provenance, and execution Plaintiffs dispute. Every objection stated in the Response is preserved and now applies to Docket Entry 16 as well as to Docket Entry 8-1.

Under Fed. R. Evid. 1003 a duplicate is admissible to the same extent as an original unless a genuine question is raised about the original's authenticity. Plaintiffs have raised that question on the record. Fed. R. Evid. 1002 then requires the original. Nothing in the amendment answers it.

## V. THE AMENDMENT *DOES NOT MOVE THE QUESTION UNDER* 9 U.S.C. § 4

The making of the agreement to arbitrate is in issue. Section 4 of the Federal Arbitration Act provides that where it is, "the court shall proceed summarily to the trial thereof," and that a party may demand a jury. 9 U.S.C. § 4. Plaintiffs demanded that trial in their Response and demand it again here. Correcting the name of the entity that maintains the records does not establish that this contract was formed, that this exhibit is what it is represented to be, or that these Defendants may enforce the Provision against these Plaintiffs. It establishes only that the declaration's foundational paragraph was wrong the first time.

## VI. THE REPLY BRIEF MISSTATES BUCKEYE. WHETHER AN AGREEMENT WAS EVER CONCLUDED IS FOR THE COURT

Docket Entry 17 tells the Court that under Buckeye Check Cashing, Inc. v. Cardegna, "challenges to the contract as a whole — including claims that the entire contract is void or was never formed — must be decided by the arbitrator." Dkt. 17 at 4–5 (citing 546 U.S. 440, 445–46 (2006)). Buckeye says the opposite, in its own footnote. The two passages are reproduced side by side at Exhibit C-38.

> "The issue of the contract's validity is different from the issue of whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses only the former, and does not speak to the issue decided in the cases cited by respondents … which hold that it is for courts to decide whether the alleged obligor ever signed the contract …."
>
> Buckeye, 546 U.S. at 444 n.1.

The Supreme Court repeated the reservation four years later: "The issue of the agreement's 'validity' is different from the issue whether any agreement between the parties 'was ever concluded,' and, as in Buckeye …, we address only the former." Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 70 n.2 (2010). And it stated the rule affirmatively the same Term: "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 296 (2010).

The Fifth Circuit applies that rule: "where a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute." Will-Drill Res., Inc. v. Samson Res. Co., 352 F.3d 211, 219 (5th Cir. 2003). Kubala, the case Defendants themselves rely on, is to the same effect: the first step "is contract formation — whether the parties entered into any arbitration agreement at all," and that step is for the court, before any delegation clause is reached. Kubala v. Supreme Prod. Servs., Inc., 830 F.3d 199, 201–02 (5th Cir. 2016). The statute says the same thing. "If the making of the arbitration agreement … be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

Plaintiffs' challenge is to the making. Dkt. 10 at 8–10. Plaintiffs will testify that the pages were never displayed to them, that they were presented with an electronic signature pad while the documents remained on the finance-office computer, and that the rate was spoken rather than shown. Whether a mark captured once on a pad and applied by software to pages the signer never viewed "was the act of the person" is the attribution question Texas law reserves to the "context and surrounding circumstances at the time of its creation, execution, or adoption." Tex. Bus. & Com. Code § 322.009(a)–(b). That is not a challenge to the validity of a contract that was concluded. It is the question whether one was.

Docket Entry 17 answers that question by assuming it. Its four points — that Plaintiffs "signed" page 2 and page 6, performed for fifteen months, and filed suit — are evidence on the making of the agreement. Dkt. 17 at 4. Evidence on a disputed question does not remove the question from the tribunal that decides it; it is what the trier of fact weighs at the trial § 4 requires. The marks on page 2 and page 6

are the marks whose attribution is in issue, on an exhibit that is a print-to-PDF generated three days after this action was filed and that carries no signature-capture record, no envelope identifier, and no audit trail. Dkt. 10 at 4–5; Exhibits C-32, C-33. Payments made on a vehicle Plaintiffs do not deny purchasing are not knowledge of, or assent to, a term they were never shown; ratification turns on "knowledge of the transaction and [the party's] actions in light of such knowledge." Land Title Co. of Dallas, Inc. v. F.M. Stigler, Inc., 609 S.W.2d 754, 756 (Tex. 1980). And a party who disputes that an instrument was ever agreed to has no place to say so but a court.

Defendants' footnote on the duty to read supplies the exception that governs here. Their own authority holds that a party bound by a writing cannot avoid it "unless he can demonstrate that he was tricked into its execution." Dkt. 17 at 4 n.1 (quoting Tex. Export Dev. Corp. v. Schleder, 519 S.W.2d 134, 139 (Tex. Civ. App.—Dallas 1974)). Execution on a signature pad with the pages withheld is the trick. The duty to read presupposes a document presented to be read.

Finally, Docket Entry 17 argues that questions of "interpretation and scope" belong to the arbitrator under the Provision and the AAA rules. Dkt. 17 at 3–4. Plaintiffs have raised neither. They have raised formation, which no delegation clause reaches until a court has found that the parties agreed to the instrument containing it. Kubala, 830 F.3d at 201–02.

## VII. CPS ASKS THE COURT TO FIND AN AGREEMENT IT CANNOT PRODUCE. THE BURDEN IS CPS'S, AND THIS RECORD DOES NOT CARRY IT

Docket Entry 17 opens with the "presumption of arbitrability." Dkt. 17 at 2. That presumption "arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists." In re Morgan Stanley & Co., 293 S.W.3d 182, 185 (Tex. 2009) (citing J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex. 2003)). "A party seeking to compel arbitration must establish the existence of an arbitration agreement." In re Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573 (Tex. 1999). The burden is CPS's. It is not Plaintiffs' burden to disprove a contract, and it is not this Court's function to presume one.

This is the whole of what CPS has offered to carry that burden: a six-page reproduction rendered by "Microsoft: Print To PDF" on August 10, 2026 — three days after this action was filed — from a file named PDF10070.PDF whose recorded author is "Amanda Lorah," with no text layer, no electronic-signature certificate, no envelope identifier, and no audit trail; sworn to first by a declarant who

attributed its custody to a company that is not a party, and then sworn to again, without change, after Plaintiffs had put its provenance in issue. Dkt. 8-1; Dkt. 16; Exhibits C-32, C-33. The page on which CPS's standing rests — page 6, the seller execution line and the assignment — exists in this record in two versions carrying the same system print stamp: Plaintiffs' copy, on which both blocks are blank, and CPS's Exhibit A, on which both are signed. Exhibit C-37.

CPS has never said who Amanda Lorah is. It has never said what system the file was printed from. It has never said when page 6 entered its file or who placed it there. It has never produced the native contract file, the deal jacket, the signature-capture record, or the record of transmission from the dealer — each demanded in writing since November 2025, demanded again in Plaintiffs' Response, and demanded again in the motion to compel filed with this Supplement. Dkt. 10 at 5–8; Exhibits C-30, C-33, C-36. A lender that holds the executed instrument in the ordinary course produces it. Ten months of written demand answered by a print-to-PDF made after suit is not an oversight. It is the answer.

No order compelling arbitration can issue on this record without a finding that Plaintiffs agreed to an instrument CPS *cannot produce in the form in which* it says the instrument was executed. The Court should decline to make that finding. The Motion should be denied for failure of proof. If it is not denied outright, no order compelling arbitration should issue before CPS produces the native file and the making of the agreement is tried under 9 U.S.C. § 4, on which Plaintiffs demand a jury.

## VIII. THE FILE HAS BEEN *DEMANDED IN WRITING TWELVE TIMES. IT* HAS BEEN PRODUCED ZERO TIMES

So that the count is on the face of the record, this is every written demand for the executed contract file, the deal jacket, and the assignment record, and what came back. The Verified Petition records that from November 2025 forward, through the notices below, CPS "has never furnished an executed retail installment contract, deal jacket, buyer's order, complete disclosures, assignment documentation, add-on product records, accounting, payment ledger, or chain of title." Dkt. 1-1 ¶ 27.

1. November 25, 2025 — Written notice under the Texas Deceptive Trade Practices Act to CPS's dealer-services address and to its Dealer Compliance Representative, invoking the FTC Holder Rule against CPS as assignee and demanding rescission and restitution. Exhibit C-25.
2. December 18, 2025 — Notice of Rescission and Final Settlement Demand. Exhibits C-13, C-14.
3. December 31, 2025 — Formal Demand for Rescission and Cease Payment, by electronic mail to CPS's Chief Legal Officer and nine other CPS addresses, with eighteen photographs of the transaction documents in Plaintiffs' possession. Exhibit C-33.

4. January 21, 2026 — Enforcement Packet, Legal Notice Packet, and Cease Collection Notice to Margarita Castro, CPS Title Supervisor. Each demands the complete executed contract, the itemization and disclosures, the payment ledger, and the assignment documents. Exhibit C-28.

5. January 26, 2026 — The same notices to CPS at Irvine, California by USPS Certified Mail, return receipt requested, tracking no. 9589 0710 5270 3847 0133 77. Exhibit C-36.

6. March 31, 2026 — Final Pre-Suit Notice and Demand for Rescission, Restitution, Document Production, and Preservation of Rights. Exhibit C-30.

7. April 13, 2026 — Supplemental Redline Addendum identifying the defects in the transaction documents page by page, including execution defects on the retail installment contract page, with a written response demanded by April 14, 2026. No substantive response. Exhibit C-19.

8. August 11, 2026 — The Verified Petition itself: "We demand the native files, metadata, signature-capture records, imaging logs, and the dealer's wet-ink deal jacket if one exists." Dkt. 1-1 ¶ 36.

9. August 28, 2026 — Written request to CPS's counsel for the contract CPS had produced to its counsel. Exhibit C-34. What came back is the August 10, 2026 print-to-PDF.

10. September 10, 2026 — Plaintiffs' Response, requesting the native files, metadata, signature-capture records, and imaging logs. Dkt. 10 at 12.

11. September 14, 2026 — Conference request to CPS's counsel on a motion to compel production of the native contract file, response requested by September 16. No response.

12. September 18, 2026 — Motion to Compel Production of the Native Contract File and the Record of Its Transmission, and to Defer Ruling on Docket Entry 8. Filed with this Supplement.

What CPS has furnished in ten months, in total: on April 1, 2026, six contract pages, a GAP addendum, and an account history, with no native file, no deal jacket, no buyer's order, no envelope identifier, no certificate of completion, and no audit trail, Exhibit C-31; and, on August 28 and again on September 4 and September 14, the same print-to-PDF. Exhibits C-32, C-34; Dkt. 8-1; Dkt. 16.

Because CPS will not produce the file, Plaintiffs have separately moved for leave to subpoena the Texas Department of Motor Vehicles for the title record on this vehicle — the Form 130-U and the dealer's reassignment as actually submitted to the State — so that whatever signature the dealer placed on the State's forms can be compared with the seller signature that appears on CPS's page 6 and on no page of Plaintiffs' set.

Against that ledger, the shape of this motion should be stated plainly. CPS removed this case on August 14, 2026. Three weeks later it filed Docket Entry 8 on the print-to-PDF it had generated on August 10. It asks this Court to send Plaintiffs to a private forum, chosen subject to CPS's approval, on the strength of a document it will not produce in native form — and to do so before the Court has ruled on

whether it has jurisdiction to hear the motion at all. Dkt. 5. An order compelling arbitration is the one outcome in which no one ever asks CPS where the file came from. That is what makes arbitration convenient for CPS, and it is why the answer to a ten-month document demand arrived as a motion to compel arbitration rather than as the document. CPS is wagering that this Court will compel first and let an arbitrator ask the question later.

Plaintiffs put it as simply as it can be put. If CPS wants this Court to decide arbitration, it produces the authentic file first. That means CPS's own file: the instrument as it was captured at the dealership on June 1, 2024, in the native electronic form in which CPS received it and keeps it, with its metadata and its signature-capture record, free of copy artifacts. It does not mean a re-scan of the pages Plaintiffs themselves e-mailed to CPS — which is what pages 1 through 5 of Exhibit A are. Dkt. 10 at 8. If the executed instrument exists in the form CPS swears it was executed, it is in CPS's system today and can be produced in ten days. If it cannot be produced, then CPS has not proven that an agreement to arbitrate was ever concluded, and there is nothing for this Court to compel. There is no third answer.

**IX. RELIEF REQUESTED**

Plaintiffs respectfully request that the Court (1) deny the Motion to Compel Arbitration at Docket Entry 8 for failure to carry the movant's burden of proving that an agreement to arbitrate was formed; (2) in the alternative, proceed summarily to trial on the making of the agreement under 9 U.S.C. § 4, on which Plaintiffs demand a jury; (3) permit the limited discovery requested in the Response into the origination, custody, and production history of Exhibit A, including native files, metadata, signature-capture records, and imaging logs; and (4) grant such other relief to which Plaintiffs may be entitled.

Respectfully submitted,

Devan Xavier Plummer

Plaintiff, pro se

Stacey Rochelle Vaughn

Plaintiff, pro se

**CERTIFICATE OF SERVICE**

I certify that on the date signed below a true and correct copy of the foregoing was served by electronic mail on Jeffrey D. Pilgrim, Claire Monroe, and Genelou Sarmiento, Pilgrim Christakis LLP, One South Dearborn Street, Suite 1420, Chicago, Illinois 60603, counsel of record for Defendants Consumer Portfolio Services, Inc. and Margarita Castro, and that the original is filed with the Clerk of the Court on the date shown in the Clerk's file stamp, from which notice issues through the Court's CM/ECF system.

Devan Xavier Plummer

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| DEVAN XAVIER PLUMMER and<br>STACEY ROCHELLE VAUGHN,<br><br>Plaintiffs,<br><br>v.<br><br>CONSUMER PORTFOLIO SERVICES, INC.;<br>GEICO TEXAS COUNTY MUTUAL<br>INSURANCE COMPANY; TIFFANY SMITH;<br>DANIELLE SAUNDERS; DANIEL STAPP;<br>CLASSIC COLLISION, LLC; DAVID<br>MILLIGAN;<br>ASHLEY DILLARD a/k/a ASHLEY MILLER;<br>CCC INTELLIGENT SOLUTIONS INC.; and<br>MARGARITA CASTRO,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 4:26-cv-06699<br><br>(Removed from Cause No. 26-08-13804,<br>284th Judicial District Court,<br>Montgomery County, Texas)<br><br>JURY DEMANDED |

## ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION

Before the Court is the Motion to Compel Arbitration filed by Defendants Consumer Portfolio Services, Inc. and Margarita Castro (Dkt. 8), Plaintiffs' Response in Opposition (Dkt. 10), Defendants' Amended Declaration (Dkt. 16) and Reply Brief (Dkt. 17), and Plaintiffs' Supplement to their Response addressing Docket Entries 16 and 17. Having considered the motion, the response, the supplement, the record, and the applicable law, the Court finds that the making of the agreement to arbitrate is in issue and that Defendants, as the parties seeking to compel arbitration, have not carried their burden of establishing that an agreement to arbitrate was formed between the parties.

It is therefore ORDERED that Defendants' Motion to Compel Arbitration (Dkt. 8) is DENIED.

SIGNED at Houston, Texas, this _______ day of ____________________, 2026.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| DEVAN XAVIER PLUMMER and STACEY ROCHELLE VAUGHN,<br><br>Plaintiffs,<br><br>v.<br><br>CONSUMER PORTFOLIO SERVICES, INC.; GEICO TEXAS COUNTY MUTUAL INSURANCE COMPANY; TIFFANY SMITH; DANIELLE SAUNDERS; DANIEL STAPP; CLASSIC COLLISION, LLC; DAVID MILLIGAN; ASHLEY DILLARD a/k/a ASHLEY MILLER; CCC INTELLIGENT SOLUTIONS INC.; and MARGARITA CASTRO,<br><br>Defendants. | § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 4:26-cv-06699<br><br>(Removed from Cause No. 26-08-13804, 284th Judicial District Court, Montgomery County, Texas)<br><br>JURY DEMANDED |

## ALTERNATIVE ORDER ON DEFENDANTS' MOTION TO COMPEL ARBITRATION: PRODUCTION OF THE NATIVE CONTRACT FILE AND TRIAL UNDER 9 U.S.C. § 4

Before the Court is the Motion to Compel Arbitration filed by Defendants Consumer Portfolio Services, Inc. and Margarita Castro (Dkt. 8), Plaintiffs' Response in Opposition (Dkt. 10), Defendants' Amended Declaration (Dkt. 16) and Reply Brief (Dkt. 17), and Plaintiffs' Supplement to their Response. Having considered the papers, the record, and the applicable law, the Court finds that the making of the agreement to arbitrate is in issue within the meaning of 9 U.S.C. § 4, and that the instrument on which the motion rests has been produced only as a reproduction whose authenticity, provenance, and execution are genuinely disputed.

It is therefore ORDERED that Defendant Consumer Portfolio Services, Inc. shall produce to Plaintiffs, within ten (10) days of the date of this Order, the executed Motor Vehicle Retail Installment Sales Contract for Deal No. 203286, VIN 5UXKU2C35H0U30230, in the native electronic format in which it is kept, without conversion, flattening, printing, rescanning, cropping, or redaction, together with all metadata associated with that file and any certificate of completion, envelope identifier, signature audit trail, or timestamp log generated by any electronic-signature platform used in its execution.

It is further ORDERED that the making of the agreement to arbitrate shall be tried summarily under 9 U.S.C. § 4, before a jury as demanded by Plaintiffs, on a date to be set by further order of the Court after the production ordered above is complete.

It is further ORDERED that ruling on Defendants' Motion to Compel Arbitration (Dkt. 8) is DEFERRED pending that trial.

SIGNED at Houston, Texas, this _______ day of ____________________, 2026.

______________________________

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE