United States District Court
Southern District of Texas
**ENTERED**
October 14, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEVAN XAVIER PLUMMER and STACY ROCHELLE VAUGHN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:26-cv-06699 |
| | § | |
| CONSUMER PORTFOLIO SERVICES, INC, et al. | § | |
| | § | |
| *Defendants*. | § | |

**ORDER**

Pending before the Court is Defendants Consumer Portfolio Services, Inc. ("CPS") and Margarita Castro's ("Castro") (collectively, "CPS" or "CPS Defendants") Motion to Compel Arbitration. (Doc. No. 8). Plaintiffs Devan Xavier Plummer and Stacey Rochelle Vaughn (collectively, "Plaintiffs") responded in opposition. (Doc. No. 10). CPS Defendants replied. (Doc. No. 17). Plaintiffs filed a Motion for Leave to Take Limited Expedited Discovery on the Formation of the Alleged Arbitration Agreement and to Defer Ruling on Docket Entry 8. (Doc. No. 18). Plaintiffs also filed a Motion to Compel Production of the Native Contract File and the Record of its Transmission, and to Defer Ruling on Docket Entry 8. (Doc. No. 20). CPS Defendants responded to both in opposition. (Doc. No. 33). Plaintiffs also filed a Motion for Sanction under Fed. R. Civ. P. 11, and Notice of Narrowed Relief. (Doc. No. 32). After reviewing the briefing and applicable law, the Court **GRANTS** CPS Defendants' motion to compel. (Doc. No. 8).

## I. FACTUAL BACKGROUND

In June 2024, Plaintiffs entered into a retail installment contract ("Contract") to finance their purchase of a BMW X6 xDrive35i from Texas Auto North. (Doc. No. 1, Ex. 1, ¶ 15). Texas

Auto North transferred and assigned the Contract to CPS. (Doc. No. 8, Ex. A, ¶ 6). Plaintiff made payments to CPS from June 2024 through September 2025. (Doc. No. 1, Ex. 1, ¶ 16). Plaintiffs allege that the vehicle's air suspension failed on April 28, 2025, which required costly repairs. (*Id.* ¶¶ 27-28). On December 17, 2025, Plaintiffs were in a car accident involving the vehicle, and Plaintiffs have not driven the vehicle since. (*Id.* ¶¶ 39-40). The next day, Plaintiffs sent a recission demand to CPS Defendants. (*Id.* ¶ 27).

In August 2026, Plaintiffs filed this action in Montgomery County alleging various state and federal law claims against CPS, its agent Castro, and various others. (*Id.*). Plaintiffs allege that Texas Auto North failed to disclose that the vehicle came from the "Canadian Grey-Market;" misrepresented the features, options, and condition of the vehicle; and that the odometer had been tampered with. (*Id.* ¶¶ 22-26, 37-40). Plaintiffs further allege that Texas Auto North misrepresented the interest rate under the Contract, failed to deliver an executed copy of the Contract, inaccurately reported Plaintiff's account to consumer reporting agencies, and that Castro threatened repossession of the vehicle. (*Id.* ¶¶ 17-21, 37-36). Interestingly, Texas Auto North is not a defendant.

Specifically, against CPS Defendants', Plaintiffs allege (1) violation of the Truth in Lending Act and Regulation Z; (2) violation of the Fair Credit Reporting Act; (3) violation of the Federal Odometer Act; (4) violation of the Texas Debt Collection Act; (5) violation of the Deceptive Trade Practices Act; (6) violation of the Texas Theft Liability Act; (7) breach of contract; (8) fraud; (9) unjust enrichment and conversion; (10) derivative liability for Texas Auto North's alleged misconduct under the FTC Holder Rule as the "holder" of the Contract; and (11) declaratory judgment seeking a declaration that the Contract is void. (*Id.* ¶¶ 56-68, 75-76).

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983). Section 2 of the FAA provides that a written arbitration agreement in any contract involving interstate commerce is valid, irrevocable, and enforceable, except on grounds that would permit the revocation of a contract in law or equity. 9 U.S.C.A. § 2. Section 4 of the FAA permits a party to seek an order compelling arbitration if the other party has failed to arbitrate under the agreement. *Id.* at § 4.

Arbitration is a matter of contract. *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 231 (2013). Courts must rigorously enforce arbitration agreements according to their terms. *Id.* at 228. As with any other contract, the parties' intentions control. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Those intentions are generously construed in favor of arbitrability. *Id.*

Courts apply a three-step analysis to determine whether a party may be compelled to arbitrate. *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008). First, courts ask: "(1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement." *Id.* Next, courts consider if "any federal statute or policy renders the claims nonarbitrable." *Id.* If the Court concludes that there is a valid agreement to arbitrate, the dispute falls within the scope of the agreement, and no federal policy renders the claims nonarbitrable, the Court may compel arbitration. *Id.*

## III. ANALYSIS

The contract at issue included an arbitration provision:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the

> claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides a claim or dispute that is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association (www.adr.org) or any other organization to conduct the arbitration subject to our approval. . . If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration.

(Doc. No. 8, Ex. A-1). This provision delegates to arbitration "any claim or dispute . . . including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute." If the Arbitration Provision is valid, Plaintiffs do not dispute that the claims fall within its scope. Thus, the only issues before the Court is whether a valid agreement to arbitrate exists, and whether there is a federal policy that would render the claims nonarbitrable.

"Where the issue is whether the parties have a valid and enforceable agreement to arbitrate, courts apply the contract law of the state governing the agreement." *Banks v. Mitsubishi Motors Credit of Am., Inc.*, 435 F.3d 538, 540 (5th Cir. 2005). Under Texas law, a binding contract requires "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding." *In re Capco Energy, Inc.*, 669 F.3d 274, 279-80 (5th Cir. 2012). Texas law provides that electronic signatures may be used in contract formation. Tex. Bus. & Com. Code § 322.009(a). That section states that an "electronic signature is attributable to a person if it was the act of the person." *Id.* The effect of such a signature is determined from the

context surrounding the "creation, execution or adoption, including the parties' agreement." *Id.* § 322.009(b).

Plaintiffs contend that the Arbitration Provision is unenforceable because the contract documents were displayed on a computer monitor while they were asked to sign each page on an electronic signature pad.[1] (Doc. No. 10, p. 9). The fact that they signed on the pad and it was thereafter electronically applied to the page in question, they argue, presents a fact issue as to whether the mark appearing on any particular page was the actual act of the signer. (*Id.*). It is clear from Exhibit A that the Plaintiffs signed each clause of the contract individually on the electronic pad. Therefore, it is not the case that Plaintiffs signed one provision and the CPS Defendants copied those signatures and applied them to various provisions of the contract without Plaintiff's knowledge. It is also not the case that the electronic signatures in question were automatically generated or populated by a computer such that Texas law would require additional proof of the efficacy of the security procedure CPS Defendants used in attributing the signature to Plaintiffs. Plaintiffs individually signed each page of the contract—whether this signature was on an electronic pad or with a pen on paper, the Arbitration Provision is enforceable under Texas law. No party has claimed that this clause is contrary to an existing federal policy, and the Court finds it is not.

[1] Plaintiffs also assert that the contract was unenforceable because it was signed after the dealership had closed, because the annual percentage rate was spoken aloud rather than written in the agreement, and because dealership employees were copying the signed documents as the Plaintiffs were signing. Plaintiffs fail to show how these circumstances in any way render the contract unenforceable.

## CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** CPS Defendants' Motion to Compel Arbitration. (Doc. No. 8). All claims against CPS Defendants are severed and are sent to arbitration. Plaintiffs' additional motions are therefore dismissed as moot. (Doc. No. 18; 20; 32).

Signed on this 11th day of October, 2026.

Andrew S. Hanen
United States District Judge